**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Pagan-Velez,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 09-CV-1918-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Sandra Pagan-Velez's ("Pagan-Velez" or "Plaintiff") appeal of the Social Security Administration's decision to deny benefits. (Doc. 1). For the following reasons, the Court affirms the decision in part, vacates it in part, and remands for further findings.

**BACKGROUND**

Pagan-Velez, who was forty-nine-and-a-half years old at the time of the Administrative Law Judge's ("ALJ") decision, graduated from high school and completed a year-and-a-half of college. (R. at 22, 80). She was previously employed as a data entry clerk and a government-health-benefits representative and worked for the same employer for the seventeen years prior to her alleged disability onset date. (*Id.* at 119). Plaintiff stopped working when her position was terminated on September 20, 2006, which was also the alleged disability onset date. Plaintiff alleges that she has the following impairments:

bilateral carpal tunnel syndrome and a torn knee ligament. She had received treatment for both her wrists and her knees, including multiple surgeries, although she ultimately ceased treatment for her carpal tunnel syndrome. To the extent specific evidence in the record is relevant to reviewing the ALJ's opinion, those facts are set forth in more detail below.

On September 22, 2006, Pagan-Velez protectively filed her application for disability insurance benefits. (*Id.* at 8, 80, 96, 100). After her application was denied (*Id.* at 37), Pagan-Velez requested a hearing, which was held on June 4, 2008, by ALJ Katherine Edgell. (*Id.* at 15–35). On September 26, 2008, the ALJ issued a decision denying Pagan-Velez's claim. (*Id.* at 5–14). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). (*Id.* at 1–3); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council).[1] Plaintiff filed this appeal.

## DISCUSSION

### I.   Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A reviewing federal court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving

---

[1] All citations to the Code of Federal Regulations ("C.F.R.") are to the 2009 edition.

- 2 -

ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and stating that if "those grounds are inadequate or improper, the court is powerless to affirm the administrative action"). Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## II. Analysis

Whether a claimant is disabled is determined using a five-step evaluation process. Any claimant seeking disability benefits must initially demonstrate (1) that she is not presently engaged in a substantial gainful activity and (2) that her disability is severe. 20 C.F.R. § 404.1520(a)–(c). After meeting steps one and two, a claimant then may be found disabled in two ways. She may prove (3) that her impairment meets or equals one of the specific impairments provided in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app'x 1. *Id.* § 404.1520(a)–(d). Alternatively, even if the claimant's impairment does not meet or equal a listed impairment, a claimant can still establish a prima facie case of disability by proceeding to steps four and five. A claimant must first prove (4) that her residual functional capacity ("RFC") precludes her from performing her past work. Once the claimant has established this prima facie case, the burden shifts to the government to present evidence (5) that the claimant can perform a significant number of other jobs in the national economy, considering the claimant's RFC, age, work experience, and education. If the

1 government does not meet this step-five burden, then the claimant is disabled.

2       At step one, the ALJ found that Pagan-Velez has not engaged in substantial gainful
3 activity since September 20, 2006, the alleged disability onset date. (R. at 10). At step two,
4 the ALJ concluded that Pagan-Velez has the following severe impairments: history of
5 bilateral carpal tunnel surgery with mild residuals and status post arthroscopy of the right
6 knee. (*Id.*) At step three, the ALJ found that Pagan-Velez does not have an impairment or
7 combination of impairments that meets or equals one of the listed impairments in 20 C.F.R.
8 pt. 404, subpt. P, app'x. 1. (*Id.* at 12). Because Pagan-Velez's impairments did not meet or
9 equal any listed impairments, the ALJ assessed her RFC, concluding that she has "the
10 residual functional capacity to perform a range of sedentary to light work[,]" that she can "sit
11 for six hours, stand and walk for four hours and lift up to ten pounds occasionally and five
12 pounds frequently," and that she is "precluded from jobs requiring continual bilateral
13 manipulation." (*Id.*) Another part of the ALJ's opinion further concludes that Plaintiff can
14 perform "light lifting and the ordinary manipulative functions inherent in routine work at the
15 sedentary to light level of exertion." (*Id.* at 13). After determining the RFC, the ALJ held
16 at step four that Pagan-Velez is incapable of performing her past relevant work as a data
17 entry clerk because the job required continual bilateral manipulation, *e.g.* continual fast
18 typing. (*Id.*) The ALJ thus continued to step five, finding that the government met its burden
19 to show that Pagan-Velez can perform other work in the national economy. Therefore, the
20 ALJ concluded that Pagan-Velez was not disabled.

21       Plaintiff does not challenge the ALJ's conclusions at steps one, two, three, or four.
22 Plaintiff instead contends that the ALJ erred at step five by failing to properly weigh Pagan-
23 Velez's subjective complaint testimony and other medical evidence.[2] Plaintiff maintains that,

---

25       [2] While Plaintiff's Brief indicates that she challenges the ALJ's weighing of "medical
26 evidence," the only arguments regarding medical evidence that Plaintiff offers relate to the weighing of subjective complaint testimony. Accordingly, the Court deems any other
27 arguments regarding the weight of particular physicians' testimony waived except to the extent relevant to determining the proper weight of Plaintiff's subjective complaint
28 testimony.

- 4 -

if the ALJ erred in weighing subjective complaint testimony, then the Court should remand for an award of benefits. Plaintiff also offers the alternative arguments that the ALJ erred in evaluating Pagan Velez's RFC and in applying the Medical-Vocational Guidelines ("grids") at step five. While the ALJ did not err in rejecting Plaintiff's subjective complaint testimony, the ALJ committed reversible error in assessing Plaintiff's RFC and in applying the grids to determine her ability to perform other work in the national economy.

### A.     Subjective Complaint Testimony

When determining the severity of symptoms from alleged impairments, the ALJ must determine whether the impairment or combination of impairments "could reasonably be expected to produce pain or other symptoms." *Batson*, 359 F.3d at 1196 (quotation omitted). If the ALJ determines that the claimant's alleged impairments reasonably could be expected to produce the alleged symptoms, and if the "claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with 'specific findings stating clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). The ALJ may consider "at least" the following factors when weighing the claimant's credibility:

> claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.

*Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (internal quotations and alterations omitted). In weighing these factors, an "ALJ cannot be required to believe every allegation of disabling pain . . . even where the claimant introduces medical evidence showing that he [or she] has an ailment reasonably expected to produce *some* pain[] [because] many medical conditions produce pain not severe enough to preclude gainful employment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). At the same time, "'[o]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms].'" *Moisa v. Barnhart*,

- 5 -

1  367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

The ALJ found that Pagan-Velez had two medically-determinable impairments, carpal tunnel syndrome and knee injuries, that reasonably could be expected to produce the symptoms that she alleged. (R. at 12). The ALJ then considered Plaintiff's subjective-complaint testimony. Plaintiff testified to bilateral hand pain, weakness, and numbness, as well as bilateral knee pain and swelling, all of which substantially limited her ability to function. (R. at 24–34). She affirmed that she is status post two carpal tunnel release surgeries on her left hand and one release surgery on her right hand. (*Id.* at 24–25). After each surgery, she testified that she experienced some relief, but that the pain would return. (*Id.*) For instance, Pagan-Velez explained that writing, holding a book for a long period of time, and using the telephone or a mouse exacerbates the pain and numbness and that she could perform tasks with her hands and fingers for only a short period of time. (*Id.* at 25–26, 30–31). After Plaintiff missed time from work due to a release surgery, she returned, but almost "immediately" experienced pain and numbness again. (*Id.* at 25). In addition to her carpal tunnel syndrome, Plaintiff further testified to bilateral knee pain and swelling, which worsens when sitting or walking for longer periods of time. (*Id.* at 24, 32). She received prescriptions for Vicodin and Valium and went to physical therapy, although Plaintiff never clearly indicated whether these treatments were successful. (*Id.* at 33). Plaintiff also attempted to use a cane, but it allegedly aggravated her carpal tunnel syndrome. (*Id.* at 34).

Based on these alleged symptoms, Pagan-Velez testified that she could lift five to ten pounds, sit for thirty minutes at a time, stand or walk for thirty minutes at a time, and needs to change position frequently. (*Id.* at 31). She testified that she could pour her own cereal and do light cleaning, but that her husband did the majority of the cooking and cleaning. (*Id.* at 29). She likewise explained that she spent most of the day resting, other than to get up and walk for awhile to prevent her knee from hurting or to perform her physical therapy home exercises. (*Id.*) Her impairments allegedly prevented her from doing most activities, including attending church or movies or reading for extended periods of time. (*Id.* at 29–33).

- 6 -

The ALJ concluded, however, that Pagan-Velez's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent that they [were] inconsistent with [the] residual functional capacity" that the ALJ found.[3] (R. at 12). Because the ALJ concluded that Pagan-Velez's impairments reasonably could cause the type of symptoms she alleged and because the ALJ made no finding of malingering, the Court may affirm the ALJ's decision rejecting the subjective complaint testimony only if the ALJ stated clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony. *See Robbins*, 466 F.3d at 883. Contrary to Plaintiff's assertion, the ALJ did not rely solely on the lack of corroborating medical evidence, but rather offered several clear and convincing reasons with respect to both the wrist and knee impairments.

Regarding Plaintiff's wrists, the ALJ explained that, after undergoing multiple carpal tunnel release surgeries, Plaintiff was able to return to work, at least for awhile. (R. at 12). And while the evidence indicates that Plaintiff likely experienced some degree of pain and/or numbness upon her return to work, the ALJ explained that Plaintiff worked "until she was laid off on her alleged onset date," suggesting that work was a feasible option until her termination. (*Id.*) Plaintiff avers that, although she was terminated, she was nonetheless disabled at the time. But the Court will not second-guess the ALJ's determination of what may have caused Plaintiff to leave her position. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (finding relevant that the plaintiff did not leave her employment as a result of any health-related impairment); *Dixon v. Sullivan*, 905 F.2d 237, 238–39 (8th Cir. 1990) (finding a claimant's testimony incredible where he left his job after termination, not due to any medical impairments).

---

[3] As noted below, the ALJ erred in determining Plaintiff's RFC. Nonetheless, it is clear that the ALJ intended to reject Pagan-Velez's subjective testimony as incredible. The Court thus finds no error simply because the ALJ happened to frame her rejection of Plaintiff's testimony by reference to the faulty RFC assessment. To the extent this was error, the error was harmless, as the ALJ offered clear and convincing reasons for rejecting the entirety of Plaintiff's subjective-complaint testimony. *See Burch*, 400 F.3d at 679 (holding that harmless errors do not warrant reversal).

The ALJ further discounted Pagan-Velez's testimony because the medical evidence suggested her symptoms were not as severe as she contended. For instance, Plaintiff reported to Dr. Michael Cushner that her symptoms had somewhat improved. (R. at 249). This is consistent with the medical records of at least three physicians, none of whom concluded that Plaintiff was too injured to perform any work activity. (*Id.* at 13). Dr. Cushner, for example, opined that Plaintiff had lost only 20% of her wrist functioning, while maintaining a full range of motion. (*Id.* at 249). To be sure, Dr. Cushner also found other indicators of an ongoing wrist injury, but the weighing of medical testimony is the province of the ALJ, not the Court. *See Andrews*, 53 F.3d at 1039 (explaining that reviewing courts defer to the ALJ's weighing of medical evidence). In addition to Dr. Cushner, Dr. William Lathan found full strength in her arms, intact hand and finger dexterity, stable and non-tender joints, negative Phalen's and Tinel's tests, a grip strength of 4/5, and no motor or sensory deficits. (*Id.* at 193–94). Dr. Stanley Ross also examined Plaintiff and recorded no swelling, tenderness, or atrophy, as well as negative Phalen's and Tinel's tests. (*Id.* at 260–61). Based on this evaluation, Dr. Ross concluded that no further treatment was required. (*Id.* at 261). Consistent with this evaluation, the ALJ noted that Plaintiff had not sought any further treatment for her wrist, indicating that her wrist symptoms were not too serious. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (holding that the claimant's ailments were not severe because they were treated only with over-the-counter medication and explaining that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("[Claimant's] claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

Although Plaintiff avers that she did not seek further treatment because her "hand impairment was declared permanent," meaning that "no additional treatment was warranted," the record does not support this argument. (Doc. 28 at 4). Dr. Cushner's medical report states only that Pagan-Velez "still has some symptoms and likely has permanent nerve damage." (R. at 249). Given that Dr. Cushner's report also indicates that Plaintiff "was

- 8 -

1  showing some progress," she still was showing improvement with treatment.  Further, Dr.
2  Cushner's report does not conclude that Plaintiff should refrain from all future treatment for
3  carpal tunnel syndrome to treat *symptoms*, even if some of the underlying nerve damage may
4  have been permanent. The ALJ thus did not err by rejecting Plaintiff's subjective complaint
5  testimony based on the lack of treatment sought.

6  With respect to Pagan-Velez's knee, the ALJ offered several reasons for rejecting the
7  subjective complaint testimony.  The ALJ first indicated that Pagan-Velez underwent knee
8  surgery, "from which she generally recovered." (R. at 12).  Pagan-Velez had arthroscopic
9  knee surgery in March 2007, and the subsequent medical records described that her "mild
10 residual weakness" was "improving," that her knee showed a "full unrestricted range of
11 motion," with no swelling, tenderness, ecchymosis, warmth, erythema, or tenderness, and
12 that she was "overall . . . doing well." (*Id.* at 270–71).  While Plaintiff points to medical
13 evidence suggesting that surgery did not lessen the symptoms, this is a factual determination
14 appropriately made by the ALJ. *See Batson*, 359 F.3d at 1198 (holding that a district court
15 must defer to an ALJ's choice of one of several rational interpretations); *Andrews*, 53 F.3d
16 at 1039 (explaining that the ALJ resolves conflicts in evidence).  Moreover, the ALJ
17 explained that Plaintiff exercised daily on a stationary bike and walked for thirty minutes.
18 (R. at 13).  Although Plaintiff avers that these exercises did not necessarily imply that she
19 could perform extensive physical activity, it was not unreasonable for the ALJ to conclude
20 that Plaintiff could at least use her knees to some degree. *See Greger v. Barnhart*, 464 F.3d
21 968, 972 (9th Cir. 2006) (affirming the ALJ's rejecting of claimant's testimony relating to
22 carpal tunnel syndrome because the claimant was able to perform some carpentry work, yard
23 work, and housework); *Fleming v. Astrue*, 274 F. App'x 571, 572 (9th Cir. 2008) (rejecting
24 claimant's testimony regarding chronic fatigue syndrome, in part, because claimant could
25 garden and ride a bicycle).  To be sure, the ALJ's explanation of these reasons were not
26 overly-detailed. The ALJ, however, was not required to give the most "extensive" findings,
27 as long as it is clear that she "did not arbitrarily reject [Plaintiff's] testimony." *Crane v.*
28 *Shalala*, 76 F.3d 251, 254 (9th Cir. 1996).  Accordingly, the Court affirms the ALJ's

rejection of Pagan-Velez's subjective complaint testimony. As explained below, however, the Court finds the ALJ erred in assessing Plaintiff's RFC and in applying the grids. To the extent a reexamination of Plaintiff's subjective complaint testimony is necessary to reach appropriate findings regarding RFC and the ability to perform other work in the national economy, the ALJ is directed to perform such a reexamination.

### B.     Residual Functional Capacity

Social Security Ruling ("S.S.R.") 96-8p (July 2, 1996), which the ALJ does not cite, provides, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." In particular, the RFC assessment must describe the *maximum* amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (emphasis added).

The RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* This includes "consider[ing] separately" the seven strength demands of a claimant's exertional capacity: "[s]itting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* And when relevant, the function-by-function assessment considers nonexertional capacity. *Id.* Of particular relevance in this case, the ALJ must analyze a claimant's manipulative functional capacity, such as reaching or handling, and must compare that capacity to actual workplace activities. *Id.* The RFC determination may be based on a wide variety of evidence in the record—the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributable to a medically determinable impairment, evidence from attempts to work, the need for a structured living environment, and work evaluations. *Id.*

The ALJ also is required to set forth his or her RFC assessment in a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . [and] discuss[ing] the individual's ability to perform

- 10 -

1 sustained work activities in an ordinary work setting on a regular and continuing basis (i.e.,
2 8 hours a day, for 5 days a week, or an equivalent work schedule)," including accounting for
3 "any material inconsistencies or ambiguities in the evidence." *Id.* "[T]he RFC must not be
4 expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,'
5 'heavy,' and 'very heavy' work because the first consideration at this step is whether the
6 individual can do past relevant work as he or she actually performed it." *Id.* Although the
7 RFC may be expressed in these categories when determining whether a claimant can do his
8 or her past relevant work as it is generally performed in the national economy, "without the
9 initial function-by-function assessment of the individual's physical and mental capacities,
10 it may not be possible to determine whether the individual is able to do past relevant work
11 as it is generally performed in the national economy because particular occupations may not
12 require all of the exertional and nonexertional demands necessary to do the full range of work
13 at a given exertional level." *Id.*; *see also Tavares v. Astrue*, 2007 WL 4570188, at *11 (N.D.
14 Cal. Dec. 21, 2007) ("At Step Five, the RFC must be expressed in regards to exertional
15 levels. However, this can only be done if an assessment as to the individual's capacity to
16 perform functions at different levels has previously been completed.") (citing S.S.R. 96-8p).
17 Even though the ALJ may be familiar with the typical limitations associated with various
18 ability levels, the ALJ nonetheless is required to "adequately explain how [s]he reached [her]
19 conclusion about Plaintiff's [RFC]." *Carillo v. Astrue*, 2009 WL 4667122, at *23 (W.D. Tex.
20 Nov. 30, 2009).

21 Plaintiff raises two challenges to the ALJ's RFC assessment. She first contends that
22 the ALJ failed to identify her maximum hand-use. She further argues that the ALJ failed to
23 make a function-by-function assessment and instead improperly concluded that Plaintiff
24 could perform a range of light and sedentary work. Although the ALJ's opinion, read
25 broadly, could be construed to define a maximum RFC, the ALJ does so only insomuch as
26 she avoids making a clear function-by-function assessment of the RFC, taking into account
27 both exertional and non-exertional abilities.
28

- 11 -

### 1. Maximum Capacity

The ALJ explained Plaintiff's RFC as follows: "[T]he claimant has the [RFC] to perform a range of sedentary to light work. She can sit for six hours, stand and walk for four hours, and lift up to ten pounds occasionally and five pounds frequently. She is precluded from jobs requiring continual bilateral manipulation." (R. at 12). With respect to Plaintiff's wrists, this statement alone does not indicate the *maximum* that Plaintiff can do because it leaves open the possibility that Pagan-Velez could perform *occasional* bilateral manipulation, even if she was incapable of performing *continual* bilateral manipulation. Read broadly, another portion of the ALJ's opinion defines the maximum RFC as including "light lifting and the ordinary manipulative functions inherent in routine work at the sedentary to light level of exertion." (*Id.* at 13). The ALJ, therefore, attempted to set forth a maximum RFC by reference to whatever manipulative ability is "inherent" in sedentary to light work.

### 2. Function-by-Function Assessment

Even construing the ALJ's opinion as attempting to set forth a maximum RFC, however, the ALJ erred by not defining the maximum RFC for Plaintiff's wrists through a function-by-function assessment. S.S.R. 96-8p requires that the RFC not be expressed initially in terms such as "sedentary" or "light." *See Tavares*, 2007 WL 4570188, at *11 (explaining that, even where the ALJ is permitted to describe an RFC by reference to exertional levels, "this can only be done if an assessment as to the individual's capacity to perform functions at different levels has previously been completed"). Rather, the ALJ must "consider[] separately" seven categories of a claimant's exertional capacity, including the ability to sit, stand, walk, lift, carry, push, and pull, as well as any relevant non-exertional categories. S.S.R. 96-8p.

Despite these requirements, the ALJ began not with a function-by-function assessment, but instead began by classifying Plaintiff's RFC as giving her the ability to "perform a range of sedentary to light work." (R. at 12). As explained above, the ALJ further described Plaintiff's maximum wrist RFC only by reference to the same broad categories of "light" and "sedentary." (R. at 13). By classifying the RFC in terms of "light" and

"sedentary," the ALJ failed to set forth a specific determination regarding Plaintiff's abilities.

For instance, although S.S.R. 96-8p cautions the ALJ to separately set forth findings relating to the seven main exertional categories, the ALJ failed to do so. The ALJ's RFC determination mentions Plaintiff's ability to sit, stand, walk, and lift, but ignores her ability to carry, push, and pull. *See id.*; (R. at 12). Because Plaintiff's carpal tunnel syndrome reasonably could affect her ability to carry, push, or pull, the ALJ failed to make a function-by-function RFC analysis and thus erred. As the S.S.R. 96-8p notes, "separate consideration may . . . influence decisionmaking at step 5 of the sequential evaluation process," particularly where, as here, findings related to the exertional categories could demonstrate Plaintiff's inability to perform certain work-related tasks.

The ALJ likewise omitted any detailed analysis of relevant nonexertional capacities. Where nonexertional capacities are relevant, the "RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." S.S.R. 96-8p. The ALJ ignored a relevant nonexertional capacity, namely, Pagan-Velez's manipulative functional capacity, including her ability to reach or handle objects in a way that is comparable to actual workplace activities. *See id.* Rather than set forth a clear assessment of Plaintiff's wrist RFC, the ALJ asserted in a separate part of the opinion that Plaintiff could engage in the "ordinary manipulative functions inherent in routine work at the sedentary to light level of exertion." (R. at 13). Even if a specific function-by-function assessment was not required, the ALJ was at least required to set forth a clear and definable RFC that could be utilized properly at step five. *See generally* S.S.R. 96-8p. The ALJ's assessment, however, uses conclusory language to describe Plaintiff's RFC as "light" or "sedentary," without adequately explaining the reasons for coming to this conclusion or describing the types of "work-related functions" she could perform, S.S.R. 96-8p. Accordingly, the ALJ did not set forth a sufficient assessment of Pagan-Velez's maximum RFC.

To be sure, the ALJ offered arguments suggesting that Plaintiff's symptoms were not as debilitating as Plaintiff contended. As explained above, the ALJ cited physician reports, Pagan-Velez's lack of treatment, and daily activities as reasons why Plaintiff exaggerated her

- 13 -

symptoms. These arguments, however, fail to clarify the amount and type of work Plaintiff could perform given the exertional and nonexertional limitations that the ALJ ignored.

These omissions are particularly salient given that it is not apparent from the facts and relevant regulations that Plaintiff's RFC would allow her to perform light or sedentary work. Sedentary work, for example, generally requires "good use of both hands and the fingers[,] i.e., bilateral manual dexterity," as well as "[f]ine movements of small objects," and "repetitive hand-finger actions." S.S.R. 96-9p. "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id.* Similarly, most light jobs "require use of arms and hands to grasp and to hold and turn objects," although use of the fingers is not as demanding as is required for sedentary work. S.S.R. 83-10. Because the record and the ALJ's opinion suggest that Pagan-Velez is at least somewhat limited in her ability to use her arms, hands, and fingers, the Court cannot easily speculate as to whether Plaintiff's RFC allows the performance of sedentary and light work. *See Zahirovic v. Astrue*, 2008 WL 4519198, at *9 (N.D. N.Y. Sept. 30, 2008) (reversing ALJ's opinion where ALJ addressed only some of the relevant functional limitations and explaining that the "naked statement that a claimant is capable of meeting the exertional demands of a particular work category, such as light work, while addressing certain components of a complete RFC analysis, does not absolve the ALJ from his or her duty to outline, on a function-by-function basis, a claimant's restrictions in his or her ability to perform work related activities and whether or not he or she has the capacity to work on a regular and continuing basis"). Thus, the ALJ's failure to appropriately assess the RFC was error.[4] Plaintiff has not argued that this error is a basis for remanding for benefits, so the Court remands for further proceedings

---

[4] The Court, however, rejects Plaintiff's assertion that the ALJ erred in assessing the RFC for Plaintiff's knee impairment. At least with respect to any knee limitations, the ALJ set forth a function-by-function assessment of the factors relevant to a knee limitation. Moreover, Plaintiff cites to no part of the record indicating that the alleged requirement to have frequent position changes would negate the ALJ's RFC finding or preclude Plaintiff from working based on her knee impairment.

1 regarding the determination of Pagan-Velez's RFC for her wrists.

### C. Medical-Vocational Guidelines (Grids)

At step five, the ALJ concluded that Pagan-Velez could perform other jobs that exist in significant numbers in the national economy. (R. at 13). The ALJ based this determination not on the testimony of a vocational expert, but instead on the grids. (*Id.*) "The ALJ may apply the grids in lieu of taking testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1988). Because the "grids are based only on strength factors[,] . . . they are sufficient only when a claimant suffers only from exertional limitations." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The grids do not apply where a "claimant's non-exertional limitations significantly limit the range of work permitted by his [or her] exertional limitations." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). For example, in this case, carpal tunnel syndrome may involve significant nonexertional manipulative limitations, thus making the grids inapplicable. *See Washington v. Astrue*, 2010 WL 3023048, at *2 (D. S.C. July 29, 2010) ("[T]he grids are not relevant to 'nonexertional impairments,' such as carpal tunnel syndrome."); *Nigino v. Astrue*, 2009 WL 840382, at *6 (E.D. N.Y. Mar. 30, 2009) (finding that ALJ erred in applying the grids where claimant presented evidence that she suffered from non-exertional limitations, namely bilateral carpal tunnel syndrome, which caused her pain and imposed manipulative limitations).

The Commissioner concedes that the ALJ's finding regarding Pagan-Velez's limitations in lifting, standing, and walking would limit her ability to perform the full range of light work, as the ALJ analyzed under the grids. Therefore, the ALJ's application of the grids was improper because the grids did not accurately and completely describe Plaintiff's ability to perform light work. *See Reddick*, 157 F.3d at 729. While the ALJ concluded that Plaintiff could stand and walk for only four hours and could lift ten pounds occasionally and five pounds frequently, the full range of light work requires the ability to stand and walk for six hours and to lift and carry twenty pounds occasionally and ten pounds frequently.

- 15 -

1          Nonetheless, the Commissioner maintains that this error was harmless because the
2   ALJ properly relied on the grids to determine that Pagan-Velez could perform a range of
3   sedentary work. This depends on whether Pagan-Velez's carpal tunnel syndrome
4   "significantly limit[s] the range of work permitted by [her] exertional limitations,"
5   *Desrosiers*, 846 F.2d at 577, or whether the ALJ properly made the findings necessary to
6   conclude that Plaintiff's carpal tunnel syndrome did not significantly limit her abilities.  As
7   already explained, however, "most sedentary jobs require good use of both hands and the
8   fingers; i.e., bilateral manual dexterity[,]" "[f]ine movements of small objects," and
9   "repetitive hand-finger actions." S.S.R. 96-9p. "Any *significant* manipulative limitation of
10  an individual's ability to handle and work with small objects with both hands will result in
11  a significant erosion of the unskilled sedentary occupational base." *Id.*  As the ALJ concluded
12  that Plaintiff could not perform continual bilateral manipulation, it is possible that Plaintiff
13  suffers from a significant manipulative limitation.  Neither the Commissioner on appeal nor
14  the ALJ offers any specific reason why Plaintiff's carpal tunnel syndrome, while perhaps not
15  as serious as Plaintiff contends, nonetheless constitutes a significant manipulative limitation
16  on her ability to use her hands and fingers, make fine movements of small objects, and
17  perform repetitive hand-finger actions.  The Government contends that, while the ALJ
18  concluded that Plaintiff could not perform "continual" manipulation, most sedentary jobs
19  require only "repetitive" hand-finger actions.  Even assuming *arguendo* that the ability to
20  perform "continual" bilateral manipulation differs in any meaningful way from the ability
21  to perform "repetitive" hand-finger actions, the ALJ's opinion does not adequately explain
22  how the inability to perform continual bilateral manipulation would not at least raise
23  concerns that Pagan-Velez would be able to perform repetitive hand-finger actions.  The ALJ
24  was required to address this discrepancy, but failed to do so.

25         The Government points to only one portion of the ALJ's opinion to indicate that the
26  ALJ properly determined that Plaintiff's carpal tunnel syndrome has no significant effect on
27  the range of available work—the ALJ's assertion that Plaintiff can "engage in . . . the
28  ordinary manipulative functions inherent in routine work at the sedentary to light level of

- 16 -

1 exertion." (R. at 13). As already explained, this statement does not clearly explain, other
2 than in conclusory terms, what level of manipulative functions Plaintiff can perform. The
3 Court cannot determine, therefore, whether the ALJ's findings establish that the grids
4 accurately and completely described Plaintiff's abilities and limitations or whether Plaintiff's
5 nonexertional limitations made the grids inapplicable. *See Reddick*, 157 F.3d at 729. While
6 the ALJ cites medical evidence suggesting Plaintiff's carpal tunnel syndrome was less severe
7 than Plaintiff claimed, the ALJ's rejection of part of Plaintiff's testimony does not
8 necessarily render the grids applicable. The Court is particularly reluctant to assume the
9 applicability of the grids given that the ALJ found that Plaintiff's multiple serious
10 impairments that prevent her from performing her past work, but did not explain adequately
11 how Plaintiff nonetheless can perform other work in the national economy despite her
12 impairments. Therefore, the ALJ erred by applying the grids without providing sufficient
13 explanation of their applicability despite record evidence suggesting that the grids may not
14 encompass Plaintiff's nonexertional limitation of carpal tunnel syndrome.

15 **IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED-IN-PART**
16 and **VACATED-IN-PART**. The ALJ's rejection of Plaintiff's subjective-complaint
17 testimony was without error, but the ALJ's RFC determination and step-five analysis was
18 error.

19 **IT IS FURTHER ORDERED** that this case is **REMANDED** for further findings as
20 set forth in this Order.

21 **IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this
22 action.

23 DATED this 22nd day of September, 2010.

G. Murray Snow
United States District Judge

- 17 -